UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

Jessica Drumm and Amanda Antolak,
Individually and for Other Similarly
Situated,

Case No. 23-10987
Honorable Jonathan J.C. Grey

        Plaintiffs,

v.

Belle Fountain Nursing &
Rehabilitation Center Inc.,

        Defendant.
_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR ATTORNEY FEES AND COSTS (ECF No. 35); DENYING AS MOOT PLAINTIFFS' MOTION FOR LEAVE TO FILE EXCESS PAGES (ECF No. 38); AND GRANTING PLAINTIFFS' MOTION TO STRIKE (ECF No. 41)**

This matter is before the Court on Plaintiffs Jessica Drumm's and Amanda Antolak's ("plaintiffs") motion for attorney fees and costs (ECF No. 35), motion for leave to file excess pages (ECF No. 38), and motion to strike stipulation of dismissal (ECF No. 41).

The motion for attorney fees and costs is fully briefed (ECF Nos. 37, 39), and the Court held a motion hearing on April 25, 2025. For the following reasons, the motion for attorney fees and costs (ECF No. 35) is

**GRANTED IN PART AND DENIED IN PART**, the motion to file excess pages (ECF No. 38) is **DENIED AS MOOT**, and the motion to strike (ECF No. 41) is **GRANTED**.

## I.    BACKGROUND

On April 27, 2023, Drumm brought this Fair Labor Standards Act ("FLSA") action on behalf of herself and others similarly situated. (ECF No. 1.) Antolak later joined the lawsuit as a party plaintiff pursuant to 29 U.S.C. § 216(b). (ECF No. 34, PageID.341.) Plaintiffs have since settled their individual FLSA claims with Defendant Belle Fountain Nursing & Rehabilitation Center, Inc. ("Belle Fountain"). (ECF No. 35, PageID.364.)

The settlement agreement specifically calls for the Court to determine attorneys' fees, costs, and expenses. Plaintiffs request an award totaling $50,269.35 ($48,234.50 in attorneys' fees plus $2,034.85 in costs/expenses).[1] (*Id.*, PageID.368.) In support of their request, they attached the 2023 State Bar of Michigan Economics of Law Survey (the "Survey"), which details Michigan lawyers' billing rates. (*See* Exhibit 2 to

---

[1] The Court notes plaintiffs' assertion that their attorneys already voluntarily reduced their attorney fees request "by over 20% as an exercise of significant billing discretion." (ECF No. 35, PageID.379.)

ECF No. 35.) Belle Fountain does not dispute that plaintiffs are entitled to attorneys' fees, expenses, and costs, however, it disputes the reasonableness of the requested fees. (ECF No. 37, PageID.474.)

## II.   ATTORNEY FEES

"When an employer is found in violation of the FLSA, '[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." *Kritcher v. Prudential Sec., Inc.*, 799 F. App'x 376, 378 (6th Cir. 2020) (quoting 29 U.S.C. § 216(b)). "A reasonable fee is one that is adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers." *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 616 (6th Cir. 2007) (citation and internal quotation marks omitted). "The starting point for the calculation of reasonable attorney's fees is the lodestar approach, in which the number of hours reasonably expended is multiplied by a reasonable hourly rate." *Kritcher*, 799 F. App'x at 379. "There is a 'strong presumption that the lodestar figure' ... represents a 'reasonable' fee." *Barrow v. City of Cleveland*, 773 F. App'x 254, 268 (6th Cir. 2019) (quoting *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986)).

### A.      Reasonableness of Hourly Rates

"A trial court, in calculating the 'reasonable hourly rate' component of the lodestar computation, should initially assess the 'prevailing market rate in the relevant community.'" *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). The "prevailing market rate" is "the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 715 (6th Cir. 2016) (citation and internal quotation marks omitted). "District courts have relied on the State Bar of Michigan [ ] Economics of Law Practice Survey to determine average billing rates in Michigan, and the Sixth Circuit has approved this practice." *Breeze Smoke LLC v. Speed Wholesale, Inc.*, No. 2:25-CV-10184, 2025 WL 2269785, at *10 (E.D. Mich. Aug. 8, 2025) (citation omitted). *See also Clements v. Prudential Protective Servs., LLC*, 100 F. Supp. 3d 604, 617 (E.D. Mich. 2015) (citing cases).

A court may adjust the lodestar figure up or down to reflect relevant considerations particular to the context of the case at hand. *Lavin v. Husted,* 764 F.3d 646, 649 (6th Cir. 2014). These considerations include:

(1) time and labor; (2) difficulty of the case; (3) skill necessary; (4) the extent the attorney is precluded from working on other matters; (5) the customer fee; (6) whether the fee is fixed or contingent; (7) the time limitations; (8) the amount involved and the results obtained; (9) the attorney's experience, reputation, and ability; (10) the undesirability of the case; (11) the nature and length of the attorney-client relationship; and (12) awards in similar cases. *Hensley v. Eckerhart*, 461 U.S. 424, 430 n.3, (1983) (citation omitted). Accordingly, the Court reviews each attorney's proposed hourly rate.

### 1.    *Jennifer McManus and Austin Anderson*

McManus requests an hourly rate of $675.00, and Anderson requests an hourly rate of $650.00. (ECF No. 35, PageID.386.) In contrast, Belle Fountain argues that an hourly rate of $400.00 is reasonable for both attorneys. (ECF No. 37, PageID.481.)

After reviewing the Survey, the Court finds an hourly rate of $595.00 reasonable for McManus and an hourly rate of $575.00 reasonable for Andreson. These rates place both attorneys between the 75th and 95th percentile of attorneys practicing civil rights and employment law. (*See* ECF No. 35-3, PageID.435.) It also places both

near the 95th percentile of attorneys with 16 to 25 years in practice (*see id.*, PageID.433), which the Court finds appropriate considering the attorneys' experience. *See, e.g., Breeze Smoke*, 2025 WL 2269785, at \*10 (finding hourly rates that fall within the 75th to 95th percentile for attorneys in relevant metrics included in the State Bar of Michigan Survey reasonable); *Fed. Nat'l Mortg. Ass'n v. River Houze, LLC*, No. 21-cv-10958, 2023 WL 3994355, at \*3 (E.D. Mich. June 14, 2023) (finding an attorney's hourly rate below the 95th percentile for all relevant metrics included in the State Bar of Michigan Survey was reasonable).

Although the settlement reached was "not particularly novel or complex" (ECF No. 35, PageID.378), the Court also considered plaintiffs' delay-in-payment argument (ECF No. 39, PageID.539) when contemplating reasonable rates. Plaintiffs' attorneys are entitled to *some* upward adjustments, as compared to the rates suggested by Belle Fountain. Awarding fees that place the attorneys between the 75th and 95th percentile of the current survey provides proper compensation without producing a windfall. *See Gonter*, 510 F.3d at 617–618; *Precision Wire Forms, Inc. v. Lincoln Elec. Automation, Inc.*, No. 1:23-CV-415, 2024 WL 2126723, at \*4 (W.D. Mich. May 13, 2024) (finding it appropriate to

use the 75th percentile rate when determining appropriate rates "[t]o account for the slightly outdated nature of the schedule.").

### 2. *William Hogg and Lauren Braddy*

Hogg requests an hourly rate of $560.00, and Braddy requests an hourly rate of $550.00. (ECF No. 35, PageID.386.) Belle Fountain argues that an hourly rate of $350.00 is appropriate for Hogg, and an hourly rate of $325.00 is appropriate for Braddy. (ECF No. 37, PageID.481.)

The Court finds an hourly rate of $500.00 reasonable for Hogg and an hourly rate of $490.00 reasonable for Braddy. This rate places both between the 75th and 95th percentile of attorneys practicing civil rights and employment law. (*See* ECF No. 35-3, PageID.435.) It also places both attorneys near the 95th percentile of attorneys with 11 to 15 years in practice, (*see id.*, PageID.433), which the Court finds reasonable based on the same reasoning it articulated when deciding McManus' and Anderson's fees.

### 3. *Taylor Jones*

Jones requests an hourly rate of $495.00. (ECF No. 35, PageID.386.) Belle Fountain asserts that $325.00 an hour is reasonable. (ECF No. 37, PageID.481.)

7

The Court finds an hourly rate of $400.00 reasonable for Jones. This rate places her between the median and 75th percentile of attorneys practicing civil rights and employment law. (*See* ECF No. 35-3, PageID.435.) It also places her between the 75th and 95th percentile of attorneys with 6 to 10 years in practice (*see id.*, PageID.433), which the Court finds reasonable for the same reasons it discussed when analyzing McManus' and Anderson's fees.

### 4. Paralegals

Belle Fountain has not challenged the proposed hourly rates of $150.00 and $175.00 for plaintiffs' paralegal time. The Court finds these rates reasonable.

### B. Reasonableness of Hours Expended

"Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley*, 461 U.S. at 434. When assessing whether counsel has exercised billing judgment, "district courts are not required to act as 'green-eyeshade accountants' and 'achieve auditing perfection' but instead must simply to

do 'rough justice.'" *Ne. Ohio Coal. for the Homeless*, 831 F.3d at 703 (quoting *Fox v. Vice*, 563 U.S. 826, 838, (2011)). Sixth Circuit precedent does not require courts "to cull through the records and conduct a [ ] line-item review." *Id.* at 713 n.11.

Accordingly, the Sixth Circuit "has recognized the propriety of an across[-]the[-]board reduction based on excessive or duplicative hours," as opposed to line-by-line reductions. *Auto All. Int'l, Inc. v. U.S. Customs Serv.*, 155 F. App'x 226, 228 (6th Cir. 2005); *see also Hensley*, 461 U.S. at 436–437 (stating that trial courts "may simply reduce the award" instead of "attempt[ing] to identify specific hours that should be eliminated").

Plaintiffs seek recovery for a total of 87.3 hours. (ECF No. 35, PageID.381.) In support, they provided the Court with billing reports and time sheets. Belle Fountain disputes these hours and requests the Court: (1) refrain from making any award related to Hogg's travel time to and from Detroit; and (2) apply an across-the-board reduction of "at least 20%." (ECF No. 37, PageID.493.)

### 1. Travel Time

Hogg seeks a total of 12.5 hours to account for his travel in this case. Specifically, Hogg requests 3.5 hours for his May 14, 2024 trip to Detroit

(ECF No. 35-2, PageID.421), 6.5 hours for his trip back to Houston (*id.*), and 2.5 hours for "[t]ime spent in airport re: flight delays due to severe weather until confirmation from airline rep[resentative] that there were no flights that could get [him] to Detroit on 5/28." (*Id.*, PageID.422.)

Belle Fountain argues that compensating Hogg for any travel-related hours is unreasonable because: (1) the May 15, 2024 motion to compel hearing was cancelled due to plaintiffs' failure to comply with the Court's rules; (2) McManus, who was more experienced and local to Detroit, could have attended the hearing; and (3) Hogg did not travel to Detroit for the subsequent May 28, 2024 hearing.[2] (ECF No. 37, PageID.483–484.)

"Travel time, expenses, and waiting time are compensable as attorney fees and costs." *Lakin v. Bloomin' Brands, Inc.*, No. 17-CV-13088, 2019 WL 13199936, at *1 (E.D. Mich. Dec. 30, 2019). *See also Perotti v. Seiter*, 935 F.2d 761, 764 (6th Cir. 1991) (finding travel compensation to be within the discretion of the district court); *Caudill v. Sears Transition Pay Plan*, No. 06-12866, 2011 WL 1595044, at *15 (E.D.

---

[2] Alternatively, Belle Fountain contends that it should only be made to pay for Hogg's "traveling between Detroit and Houston, [which] should be limited to the flight time (approximately 2.9 hours) and paid at half-rate." (ECF No. 37, PageID.483.)

Mich. Jan. 4, 2011) ("[T]ravel time is ordinarily billable and therefore appropriately included in an award of attorney's fees..."). When determining whether to award fees for particular hours billed, the inquiry is not "whether in hindsight the time expenditure was strictly necessary to obtain the relief achieved." *Wooldridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1177 (6th Cir. 1990), *abrogated on other grounds by Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Resources*, 532 U.S. 598 (2001). Instead, "the standard is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed." *Id.*

The Court finds it reasonable to compensate Hogg for his travel time to Detroit. "On May 14th, when [Hogg] boarded the plane to Detroit, the court-ordered in-person hearing was still on [the] calendar. The hearing was cancelled while [Hogg was] mid-flight." (ECF No. 39, PageID.542.) Given these facts, it was reasonable for Hogg to travel to Detroit. Further, the Court is unpersuaded by Belle Fountain's attempt to blame plaintiffs for the adjournment; the cancellation was due to *both* parties' failure to follow Court procedures. Finally, during the April 25,

2025 hearing regarding this motion, Hogg provided a reasonable explanation as to why he, instead of McManus, attended the hearing, specifically noting that: (1) he prepared the motion and had the most first-hand knowledge to best argue it; and (2) preparing McManus to argue it would have required more time than travelling to argue it himself. Considering these facts, the Court finds the 3.5 hours of travel to Detroit reasonable. However, the Court finds it equitable to reimburse Hogg at 50% of his hourly rate. *See Gratz v. Bollinger*, 353 F. Supp. 2d 929, 943 (E.D. Mich. 2005) (awarding only 50% of out-of-state attorneys' travel time because defendants should not have to bear additional costs due to plaintiffs' counsel being in different cities.).

As for the 2.5 hours Hogg spent attempting to travel to Detroit for the rescheduled hearing, the Court, for the same reasons stated above, finds that Hogg reasonably expended these hours in pursuit of the case, *Wooldridge*, 898 F.2d at 1177, but awards these hours at 50% of Hogg's hourly rate, *see Gratz*, 353 F. Supp. at 943.

Finally, the Court refrains from reimbursing Hogg for the hours spent travelling back to Houston. As detailed above, the hearing was cancelled due to the parties' failure to abide by the Court's rules. Thus,

traveling back to Houston following the cancelled hearing cannot reasonably have been considered "in pursuit of success" of the case. *Wooldridge*, 898 F.2d at 1177.

### 2. Across-the-Board Reduction

Belle Fountain requests the Court apply a 20%, across-the-board reduction to account for: (1) excessive time spent working on a joint report that did not comply with the practice guidelines; (2) vague and redundant entries; (3) the duplication of efforts caused by multiple attorneys/paralegals simultaneously performing the same tasks; and (4) billing for purely administrative tasks.[3] (ECF No. 37, PageID.493.) Based on the findings set forth below, the Court finds it reasonable to apply a

---

[3] During the hearing on this motion, Belle Fountain raised a fees-for-fees argument, estimating that the total number of hours that plaintiffs' attorneys spent in pursuit of attorney fees exceeded three percent. Plaintiffs rebutted this by arguing that Belle Fountain had the opportunity to negotiate the fee amount and declined to do so, forcing them to bring the motion for fees and spend time preparing the reply. The Sixth Circuit has abrogated the rule that Belle Fountain asks the Court to apply. *See Ne. Coal. for the Homeless*, 831 F.3d at 725 (abrogating the rule from *Coulter v. Tennessee*, 805 F.2d 146, 151 (6th Cir. 1986), that "limit[ed] the hours allowed for preparing and litigating the attorney fee case to 3% of the hours in the main case when the issue is submitted on the papers without a trial ..."). In abrogating the rule in *Coulter*, the Sixth Circuit held that the "district court can correct any abuses at the fees for fees stage under the 'reasonableness' standard." *Id.* at 722. Provided (1) no argument that the number of hours spent was unreasonable; (2) plaintiffs' argument as to reasonableness; and (3) that the Court will already be conducting an across-the-board reduction, it declines to apply Belle Fountain's suggested cap.

20% across-the-board reduction to "trim the fat" from plaintiffs' invoices. *Pianko v. Gen. R.V. Ctr., Inc.*, No. 20-CV-13371, 2025 WL 546935, at \*9 (E.D. Mich. Feb. 19, 2025), *reconsideration denied*, No. 20-CV-13371, 2025 WL 1734045 (E.D. Mich. June 23, 2025).

### a.   Joint Report

Belle Fountain first disputes the 2.1 hours billed for a joint report, arguing that: (1) most of that time went to revising plaintiffs' own errors; and (2) allowing plaintiffs to recover these hours would incentivize parties to not follow the Court's rules. (ECF No. 37, PageID.484–485.) In response, plaintiffs' point blame at Belle Fountain. While the Court refrains from making any specific finding as to who was at fault, it agrees that 2.1 hours for revising a single joint report is slightly excessive and took this into account when calculating its 20% reduction.

### b.   Vague and Redundant Entries

Belle Fountain next contends that the hours disclosed in the billing statements are insufficiently detailed to substantiate a finding of

14

reasonableness or to confirm that efforts were devoted to appropriate purposes.  Belle Fountain takes issue with 39 of McManus' entries.

In response, plaintiffs rely on *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 553 (6th Cir. 2008). There, the Sixth Circuit explained that even if "some of the time entries in counsel's billing statement provide only the briefest description of the task completed, … explicitly detailed descriptions are not required." *Id.* at 554. The court further noted that "[c]ounsel's billing entries, when read in the context of the billing statement as a whole and in conjunction with the timeline of the litigation," can support a district court's "determination that the hours charged were actually and reasonably expended in the prosecution of the litigation." *Id.* (citation omitted).

While undisputably bare, many of McManus' billing entries "when viewed against the backdrop of [her] billing statements as a whole and in the context of the Court's overall knowledge of what transpired in this case, [largely] provide a sufficient basis for the Court to evaluate the reasonableness of counsel's efforts." *Franklin v. Beydoun*, No. 14-14801, 2018 WL 11474571, at *6 (E.D. Mich. Dec. 3, 2018). However, the Court notes that certain entries, for example, those described as "E-mail

[to/from] co-counsel" (*see* ECF No. 35-5, PageID.463–465), do not enable the Court to ascertain whether the time spent on these tasks was reasonable. *See Gratz*, 353 F. Supp. 2d at 939 (reducing award by 10% for vague entries such as "telephone conference" and "review correspondence"). The Court took these limited entries into account when calculating its 20% reduction.

### c.     Duplicative and Excessive Entries

Belle Fountain further argues that some of McManus' hours are duplicative and excessive. To its first argument, Belle Fountain points to multiple entries described as "Review emails from/to co-counsel to defense counsel" (ECF No. 35-5, PageID.464) and asserts that Hogg and McManus appear to have billed for some of the same emails. The Sixth Circuit has recognized that "the mere fact that attorneys confer with one another does not automatically constitute duplication of effort." *Sigley v. Kuhn*, No. 98-3977, 2000 WL 145187, at *8 (6th Cir. Jan. 31, 2000) (citation omitted). However, "to the extent that 'complicated cases[] involving many lawyers' typically pose a risk of overlapping efforts, the Sixth Circuit has 'approved the arbitrary but essentially fair approach of simply deducting a small percentage of the total hours to eliminate

duplication of services,' reasoning that this 'approach seems preferable to an attempt to pick out, here and there, the hours which were duplicative.'" *Franklin*, 2018 WL 11474571, at *7 (citation omitted). The Court agrees that the few entries highlighted by Belle Fountain appear duplicative and considered this in its across-the-board reduction.

As to excessiveness, Belle Fountain argues that "McManus's fee ledger includes entries for review of every e-filing, including the filings of co-counsel, for no apparent reason." (ECF No. 37, PageID.488.) It goes on to argue that, "even if some fees are reasonable, it is unreasonable for multiple separate entries on [the same] days (e.g., four entries on April 27, 2023, three entries on August 16, 2023, etc.)." (*Id.*)

While plaintiffs' counsel has the right to undertake tasks associated with staying appraised of the case, the Court agrees with Belle Fountain that billing for the review of docket entries multiple times a day, a consistent trend of McManus', teeters into being unreasonable. *See Barrett v. Detroit Heading, LLC*, No. 05-72341, 2007 WL 1655434, at *10 (E.D. Mich. June 7, 2007), *aff'd*, 311 F. App'x 779 (6th Cir. 2009) ("[H]ere are many instances of Plaintiff's counsel spending far too much time reviewing ECF filings, particularly when a separate entry is made for

each ECF filing received.") Accordingly, the Court considered these entries when calculating its 20% reduction.

### d.   Clerical Work

Belle Fountain contends that plaintiffs' time records include fees for administrative or clerical tasks. "A purely clerical or secretarial activity is not billable at a paralegal's rate, or at any rate at all, because such tasks are included in office overhead." *Wesley v. Rigney*, No. CV 10-51-DLB-JGW, 2016 WL 6787235, at *4 (E.D. Ky. May 18, 2016) (citation and internal quotation marks omitted); *Gibson v. Scott*, No. 2:12-CV-1128, 2014 WL 661716, at *4 (S.D. Ohio Feb. 19, 2014) (quoting *Hensley*, 461 U.S. at 437) ("[P]urely clerical or secretarial tasks should not be billed (even at a paralegal rate), because '[h]ours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority.'"). "Clerical work involves tasks that do not require legal knowledge, such as filing motions, preparing or reviewing summons, and receiving and filing correspondence." *Wesley*, 2016 WL 6787235, at *4; *B&G Mining, Inc. v. Office of Workers' Comp. Programs*, 522 F.3d 657, 666 (6th Cir. 2008) (citation omitted) (noting

that "receiving and filing correspondence presumably constitutes clerical work").

Having reviewed the records, the Court agrees that plaintiffs' paralegals billed multiple hours for tasks that appear, at least in part, administrative. Various entries seem to describe clerical tasks such as indexing, filing, sending documents, and scheduling or confirming due dates. (*See, e.g.,* ECF No. 35-2, PageID.421–422, ECF No. 35-5, PageID.466.) These tasks are not reimbursable and subject to a reduction. *See e.g., Ownby v. Colvin*, 2015 WL 1757850, at *4 (E.D. Tenn. Apr. 17, 2015) ("any entries which include filing, mailing, and scheduling should be struck or reduced, depending on the entry"). The hours billed for clerical tasks were thus part of the Court's calculation when determining its 20% reduction.

Having determined reasonable hourly rates and hours expended, and after conducting a 20% reduction, the Court awards plaintiffs a total of $30,534.80 in attorney fees (Hogg: 46 hours x $500.00 = $23,000; Jones: 3.6 hours x $400.00 = $1,440.00; Thompson: 3.6 hours x $150.00 = $540.00; Lewton: 0.2 hours x $150.00 = $30.00; McManus 14.7 hours x $595.00 = $8,746.50; Jeffers: 1.4 hours $150.00 = $210.00; Anderson: 2.7

hours x $575.00 = $1,552.50; Braddy: 5.3 hours x $490.00 = $2,597.00; and Paralegal: 0.3 hours $175.00 = $52.50; for a total of $ 38,168.50, reduced by 20% ($38,168.50 x .2 = $7,633.70)).

## C.    Costs

Plaintiffs seek reimbursement for $2,034.85 in litigation-related costs and expenses. (ECF No. 35-1, PageID.401.) District courts are permitted "to award those incidental and necessary expenses incurred in furnishing effective and competent representation as part of the award of attorney fees." *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 827 (6th Cir. 2013). (citation and internal quotation marks omitted). "Recoverable out-of-pocket expenses are those incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services, such as reasonable photocopying, paralegal expenses, and travel and telephone costs." *Id.* (cleaned up).

Plaintiffs' costs include the following categories: (1) filing fees; (2) process server fees; (3) printing/copying fees; (4) postage; (5) PACER fees; and (6) Hogg's travel and lodging expenses to attend court proceedings in May 2024. (ECF No. 35-1, PageID.401.) Belle Foutain only objects to the travel-related fees.

20

The Court finds the first five requests reasonable and recoverable. As for the travel expenses, the Court awards a partial reimbursement. Plaintiffs request a total of $1,451.63 in travel expenses: $455.18 for the first roundtrip flight from Houston to Detroit, $422.97 for the second roundtrip flight from Houston to Detroit, $181.13 in lodging for May 14, 2024, $217.34 in lodging for May 27, 2024, $166.35 for transportation to and from the airport, and $8.66 for airport parking. (*Id.*) In light of the Court's findings related to Hogg's travel, it finds reimbursement for *half* of first roundtrip flight, the second roundtrip flight, lodging for May 27, 2024, *half* of the airport transportation, and parking reasonable. The remaining travel expenses were not "necessary … in furnishing effective and competent representation," and thus not reimbursable. *Waldo*, 726 F.3d at 827. Accordingly, the Court awards plaintiffs $1,542.94 in costs.

## III.   CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART AND DENIES IN PART** plaintiffs' motion for attorney fees and costs and

awards plaintiffs a total of $32,077.74, which consists of $30,534.80 in attorney fees and $1,542.94 in costs.

**IT IS FURTHER ORDERED** that plaintiffs' motion to file excess pages is **DENIED AS MOOT**. (ECF No. 38.)

**IT IS FURTHER ORDERED** that plaintiffs' motion to strike, for the reasons stated therein, is **GRANTED**. (ECF No. 41.)

**IT IS FURTHER ORDERED** plaintiffs' stipulation of dismissal (ECF No. 40) is **STRICKEN** from the record.

**SO ORDERED.**

<u>**s/ Jonathan J.C. Grey**</u>
Jonathan J.C. Grey

Dated: March 30, 2026                  United States District Judge

## Certificate of Service

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 30, 2026.

**s/ S. Osorio**
Sandra Osorio
Case Manager